UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                  :

RANK GROUP LIMITED,           :   No. 12 cv 3769 (GBD) (MHD)

                    :

             Plaintiff,    :

                    :   ECF Case

   - against -         :

                    :

ALCOA INC.,                :

                    :

           Defendant.   :

                    :
--------------------------------------------------------X


## DEFENDANT ALCOA INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT


**K&L GATES LLP**
599 Lexington Avenue
New York, NY 10022
(212) 536-3900

*Attorneys for Defendant Alcoa Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

I.    PRELIMINARY STATEMENT ...................................................................................... 1

II.    FACTS ................................................................................................................................. 3

      A.    The Underlying Acquisition ................................................................................. 3

      B.    The 2008 Loan ....................................................................................................... 4

      C.    The Audit and Chilean Tax ................................................................................... 6

      D.    The Tax Indemnification Provisions and Rank's Demand .................................... 8

III.    ARGUMENT ...................................................................................................................... 9

      A.    Motion to Dismiss Standard .................................................................................. 9

      B.    Rank's Complaint Fails to State a *Prima Facie*
          Claim for Indemnification .................................................................................... 10

              1.    Count I of Rank's Complaint Fails to State
                    a Claim for Indemnification Pursuant to
                    Section 13.01(a)(i) of the Acquisition Agreement ................................... 11

               2.    Count II of Rank's Complaint Fails to State
                    a Claim for Indemnification Pursuant to
                      Section 13.01(a)(iv) of the Acquisition Agreement ................................ 14

IV.    CONCLUSION .................................................................................................................. 17

## TABLE OF AUTHORITIES

Cases

_2632 Realty Dev. Corp. v. 299 Main St., LLC,_
  94 A.D.3d 743 (N.Y.A.D. 2012) ...................................................................... 13

_Achtman v. Kirby, McIneney & Squire, LLP,_
  464 F.3d 328 (2d Cir. 2006) ........................................................................... 10

_Ashcroft v. Iqbal,_
  556 U.S. 662 (2009) ............................................................................. 9, 10, 15

_Bell Atlantic Corp. v. Twombly,_
  550 U.S. 544 (2007) ............................................................................. 9, 10, 15

_Chambers v. Time Warner, Inc.,_
  282 F.3d 147 (2d Cir. 2002) ....................................................................... 5, 10

_De Jesus v. Sears Roebuck & Co., Inc.,_
  87 F.3d 65 (2d Cir. 1996) ............................................................................... 15

_Dystal, Inc. v. Hub Properties Trust,_
  92 A.D.3d 826 (N.Y.A.D. 2012) ...................................................................... 12

_Goldwasser v. Geller,_
  279 A.D.2d 297 (N.Y.A.D. 2001) .................................................................... 13

_Greenfield v. Philles Records, Inc.,_
  780 N.E.2d 166 (N.Y. 2002) ........................................................................... 12

_Grosz v. Museum of Modern Art,_
  772 F.Supp.2d 473 (S.D.N.Y. 2010) ............................................................... 10

_Hooper Assocs., Ltd. v. AGS Computers, Inc.,_
  548 N.E.2d 903 (N.Y. 1989) ........................................................................... 13

_LaFleur v. MLB Indus., Inc.,_
  52 A.D.3d 1087 (N.Y.A.D. 2008) .................................................................... 13

_Levy v. Southbrook Int'l Invs., Ltd.,_
  263 F.3d 10 (2d Cir. 2001), .............................................................................. 9

_Papasan v. Allain,_
  478 U.S. 265 (1986) ....................................................................................... 15

_R/S Assoc. v. New York Job Dev. Auth.,_
  771 N.E.2d 240 (N.Y. 2002) ........................................................................... 12

*Smartix Int'l Corp. v. Mastercard Int'l, LLC,*
    No. 06-cv-5174 (GBD), 2008 WL 4444554 (S.D.N.Y. Sept. 30, 2008) ...................... 5, 10

Rules

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 1, 3, 9, 15

Defendant Alcoa Inc. ("Alcoa") respectfully submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## I.   **PRELIMINARY STATEMENT**

In this lawsuit, Rank Group Limited ("Rank"), an Australian company, seeks to foist upon Alcoa the obligation to pay Chilean taxes and related costs that are Rank's responsibility. To accomplish this objective, Rank's two-count Complaint asks this Court to either re-write (Count I) and/or ignore (Count II) the clear terms of a 2007 Acquisition Agreement, pursuant to which Alcoa sold to Rank more than 25 subsidiaries comprising Alcoa's Packaging and Consumer business. Specifically, Rank alleges that Alcoa is obligated to indemnify it for taxes, interest and fines assessed by the Chilean government for the 2009 tax year (the "Chilean Tax") against subsidiaries of Rank that were acquired from Alcoa pursuant to the Acquisition Agreement. Rank claims that Alcoa's indemnification obligation for the Chilean Tax arises from Sections 13.01(a)(i) (Count I) and 13.01(a)(iv) (Count II) of the Acquisition Agreement. As this Memorandum will demonstrate, neither of these provisions, which must be interpreted narrowly under New York law, triggers any duty to indemnify Rank under the facts alleged in the Complaint.

**First,** Count I of Rank's Complaint incorrectly alleges that Alcoa has breached Section 13.01(a)(i) of the Acquisition Agreement by failing to indemnify Rank for the Chilean Tax. Section 13.01(a)(i) of the Acquisition Agreement plainly limits Alcoa's indemnification obligation to "Taxes imposed on or with respect to any Transferred Subsidiary…, with respect to any *Pre-Closing* Date Tax Period", and the Chilean Tax was not imposed "with respect to any Pre-Closing Date Tax Period." Specifically, the closing occurred on February 29, 2008, and Rank concedes that the Chilean Tax was imposed for post-closing tax years 2009 and 2010.

(Compl., ¶ 30 (stating that the audit was for "tax years 2009 and 2010, which corresponded to calendar years 2008 and 2009.")).  Notably, Rank does not seek indemnity for taxes imposed for the 2010 tax year.  (*Id.* at ¶ 6; *see also id.* at Exhibit 2).  Rank attempts to re-write the contract to avoid the conclusion dictated by these facts and the clear terms of Section 13.01(a)(i) – namely, that the 2009 Chilean tax year is not a "Pre-Closing Date Tax Period."  To that end, Rank tellingly spends nearly an entire page of the Complaint engaging in a tortured discussion that attempts to show that the 2009 Chilean tax year actually is a "Pre-Closing Date Tax Period" even though the closing occurred in February 2008.  (*Id.* at ¶ 41).  Rank's strained and self-serving interpretation of the indemnity provision fails, and Count I should be dismissed.

**Second,** Rank seeks indemnification pursuant to Section 13.01(a)(iv) of the Acquisition Agreement.  As Rank's Complaint makes clear, any indemnification obligation Alcoa might have pursuant to Section 13.01(a)(iv) is expressly conditioned on, and subject to, three enumerated exceptions.  (Compl., ¶ 42).  Two of those exceptions directly preclude Rank's claim.  One exception provides that Alcoa has no duty to indemnify Rank for taxes arising out of "Post-Signing Restructuring Actions" for any taxable period (or portion thereof) beginning after December 31, 2008.  (Acquisition Agreement, attached to Rank's Complaint as Exhibit 1, at § 13.01(a)(iv)(C)).  Another of those exceptions – underlined in pen in the copy of the Acquisition Agreement that Rank attached to its Complaint, presaging its significance – provides in relevant part that Alcoa will have no duty to indemnify Rank for "Taxes for a Post-Closing Date Tax Period that would not have arisen but for any action taken by the Purchaser or any of its Affiliates...."  (*Id.* at § 13.01(a)(iv)(B)).  Rank carefully avoids directly addressing whether Rank's own actions played a causal role in the imposition of the Chilean Tax.  As this Memorandum will establish, Rank's careful pleading attempts to dance through the raindrops of

2

this exception, largely by strategic silence combined with boilerplate, conclusory assertions that the Section 13.01(a)(iv) exceptions are "not applicable here." (Compl., ¶ 54). Rank's conclusory assertions fail to meet its pleading burden under *Iqbal* and *Twombly*. As such, Count II also fails to state a claim and must be dismissed.

Accordingly, and for the reasons discussed more fully below, Rank's Complaint fails to state claims upon which relief can be granted and, as such, must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## II.   FACTS

### A.   The Underlying Acquisition

On December 21, 2007, Alcoa and Rank entered into the Acquisition Agreement, pursuant to which Rank acquired the more than 25 subsidiaries of Alcoa that comprised the Packaging & Consumer business (defined in the Acquisition Agreement as the "Transferred Subsidiaries"). (Compl., ¶ 15).[1] As here relevant, the Transferred Subsidiaries included a company then-named Alcoa Latin American Holdings Corporation, formed under the laws of the British Virgin Islands, which Rank subsequently renamed CSI Latin American Holdings Corporation ("CSI LAHC"). (*Id.* at ¶ 16). CSI LAHC was and remains the parent company of Alusud Embalajes Chile Ltda. ("Alusud Chile"), an entity formed under the laws of Chile. (*Id.*). By acquiring CSI LAHC, Rank also acquired its 99.3% ownership interest in Alusud Chile. (*Id.*).

As is customary in large acquisitions, the Acquisition Agreement contemplated that Alcoa would sell the Transferred Subsidiaries to Rank on essentially a "cash free/debt free" basis. To accomplish this mutually desired structure, the parties agreed that Alcoa would

---

[1]   Alcoa will assume, solely for purposes of this Motion, the truth of the well-pleaded factual allegations contained in the Complaint.

undertake certain "Post-Signing Restructuring Actions" designed to remove cash from the Transferred Subsidiaries prior to the February 29, 2008 closing date (the "Closing"), including making certain intercompany loans. (Compl., ¶¶ 3, 17, 24).

Rank makes, though never justifies, the self-serving claim that these Post-Signing Restructuring Actions were "designed and undertaken for Alcoa's benefit[.]" (Compl., ¶ 17).[2] Yet Rank admits that "Alcoa's right to perform these restructuring steps was memorialized in Section 7.03 of the Acquisition Agreement" (*Id.* at ¶ 3; *see also* Acquisition Agreement, § 7.03), and further admits that the restructuring actions were outlined in an 87-page "Restructure Plan" set forth in Attachment 7.03 to the Seller Disclosure Letter. (Compl., ¶ 24). Rank also admits that Alcoa performed the Post-Signing Restructuring Actions with Rank's full knowledge and consent (*id.* at ¶ 3), and that these actions benefitted <u>Rank</u> in the form of a lower purchase price, because the "agreed-upon purchase price was based on the Business not retaining any cash at the Closing." (*Id.* at ¶ 3). In other words, contrary to Rank's characterization, the Post-Signing Restructuring Actions were necessary to achieve the cash free structure of the Acquisition that both parties desired, and resulted in a significant monetary benefit to Rank in the form of a reduction in the cash payment that otherwise would have been required to complete the transaction.

**B.    The 2008 Loan**

One of the Post-Signing Restructuring Actions agreed to by both parties and outlined in the Acquisition Agreement – and the one at issue in Rank's Complaint – is a pre-closing loan from Alusud Chile to its direct parent, CSI LAHC (the "2008 Loan"). (Compl., ¶ 24). Pursuant

---

[2]      A "cash free/debt free" structure benefits both parties, and specifically benefits the purchaser by reducing the up-front cash consideration that must be paid to the seller – because, typically, cash held by transferred subsidiaries is compensated for on a dollar-for-dollar basis. (*See* Compl., ¶ 3).

to a loan agreement dated as of January 29, 2008 (the "2008 Loan Agreement"), Alusud Chile transferred approximately US$34,000,000 to CSI LAHC, Alusud Chile's parent company, thereby removing the cash balance from Alusud Chile prior to Closing. (*Id.; see also* 2008 Loan Agreement, attached to the Affidavit of Andrew R. Stanton ("Stanton Affidavit") as Exhibit "A," at § 1). Although Rank discusses the 2008 Loan Agreement and its later Loan Amendment in the Complaint, and attaches to the Complaint certain exhibits, Rank did not attach as exhibits any of those documents.[3]

The 2008 Loan Agreement was deliberately drafted with terms and conditions to make it clear that the transfer was, in fact, a loan and not a dividend. This was important because a dividend would be subject to a 35% dividend withholding tax under Chilean tax law, while a loan would not. To ensure that the loan would stay a loan after Rank acquired the Transferred Subsidiaries, the 2008 Loan Agreement specified a one-year, non-renewable maturity date (of January 28, 2009) and an arm's length interest rate. (2008 Loan Agreement, §§ 2, 3). The 2008 Loan Agreement also included a provision categorically prohibiting the agreement from being renewed past its one-year maturity date, stating "[t]his agreement *may not be renewed in any event*." (*Id.* at § 3.4) (emphasis added). These provisions – relating to term, rate and non-

---

[3]    Alcoa attaches the 2008 Loan Agreement and the Loan Amendment, as defined and discussed herein, to the Stanton Affidavit. *See* Stanton Aff., Exhs. A and B. Rank's failure to attach these documents as exhibits to its Complaint does not preclude Alcoa from doing so, nor does it preclude the Court from considering those agreements in deciding Alcoa's Motion. *See, e.g., Smartix Int'l Corp. v. Mastercard Int'l, LLC*, No. 06-cv-5174 (GBD), 2008 WL 4444554, *2 (S.D.N.Y. Sept. 30, 2008) (in reviewing a motion to dismiss, the Court may consider documents attached to the complaint as exhibits and any documents incorporated by reference into the complaint); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint.").

renewability – were essential to establish and maintain the intended character of the 2008 Loan as a loan, and not a taxable dividend. All parties understood the purpose of the 2008 Loan and the reasons that it was structured in the manner described above.[4]

Rank admits that after the acquisition closed, it completely disregarded – and in fact, simply re-wrote – the clear and deliberately-selected terms of the 2008 Loan Agreement. On January 28, 2009, the 2008 Loan was amended so as to, among other things, modify the interest rate and extend the term of the loan to four years – in direct violation of the 2008 Loan Agreement's absolute and unconditional prohibition on renewal (the "Loan Amendment"). (Compl., ¶ 28; *see also* Loan Amendment, attached to the Stanton Affidavit as Exhibit "B"). As a justification for this conduct, Rank points to Section 10 of the 2008 Loan Agreement which, according to Rank, "contemplate[s] that the parties could amend the agreement, so long as they did so in writing[.]" (Compl., ¶ 28). As noted above, Rank's Complaint does not attach the 2008 Loan Agreement or the Loan Amendment, nor does it mention Section 3.4 of the 2008 Loan Agreement, which unequivocally precluded any renewal of the 2008 Loan's term from the original one-year maturity date.

## C.    The Audit and Chilean Tax

The post-closing Loan Amendment effectively accomplished what Alcoa carefully attempted to prevent (with Rank's full knowledge and agreement) in drafting the 2008 Loan Agreement. On September 27, 2010 – over a year after the 2008 Loan should have been repaid in full by Rank's subsidiary, CSI LAHC – Alusud Chile received notification from the Chilean Tax Authority, Servicio de Impuestos Internos ("SII") that it had begun an audit of Alusud Chile

---

[4]     Rank admits that the 2008 Loan was expressly authorized by the Acquisition Agreement and was outlined in Alcoa's 87-page Restructure Plan attached to the Seller Disclosure Letter. (Compl., ¶ 24).

for the tax years 2009 and 2010. (Compl., ¶ 30). At the conclusion of the audit, Rank alleges that Alusud Chile and CSI LAHC paid a total of $10,139,882.24 in taxes, fines and interest for the 2009 tax year (collectively, the "Chilean Tax"). (*Id.* at ¶ 38). Rank does not mention the fact that Alusud Chile and CSI LAHC were also assessed taxes, fines and interest for the 2010 Chilean tax year, although that assessment is reflected in the Notice Letter of Review Completion from SSI that Rank attaches to the Complaint (the "Final SSI Notice"). (Compl. at Exh. 2, p. 5).

In a series of carefully-pled allegations, Rank seeks to downplay the significance of the Loan Amendment on the imposition of the Chilean Tax. In particular, Rank broadly attributes the Chilean Tax for the 2009 tax year to "the 2008 Loan Transaction" and alleges that SSI "asserted that under Chilean tax law this Post-Signing Restructuring Action by Alcoa constituted a profit distribution from Alusud Chile to its immediate parent, CSI LAHC" subject to the 35% withholding tax. (Compl., ¶ 33). Rank further alleges that the Final SSI Notice "made it clear that the 2008 Loan Transaction, as memorialized in the 2008 Loan Agreement, triggered the tax liability," and, in precisely-worded phrasing, that the notice "did not ***mention*** the Loan Amendment." (*Id.* at ¶ 39) (emphasis added).

Rank, despite having filed a specific and detailed Complaint with exhibits, never alleges that the Loan Amendment played no causal role in the imposition of the Chilean Tax and attaches only a single communication from SSI on the subject of the Tax. Nor does Rank allege that the Chilean Tax would have been imposed by SSI whether or not the 2008 Loan had been repaid prior to the audit, as it should have been pursuant to the terms of the 2008 Loan Agreement. Instead, other than stating cryptically that the Final SSI Notice does not "mention" the Loan Amendment, Rank's otherwise detailed Complaint is silent on this topic.

**D.     The Tax Indemnification Provisions and Rank's Demand**

On or about October 29, 2010, Rank demanded indemnification from Alcoa for the Chilean Tax pursuant to the indemnification provisions in Section 13.01(a)(i) and 13.01(a)(iv) of the Acquisition Agreement. (Compl., ¶ 30). Alcoa rejected Rank's demand for indemnification. (*Id.* at ¶ 31). Accordingly, on or about May 11, 2012, Rank filed its Complaint against Alcoa, asserting two counts for breach of Sections 13.01(a)(i) and 13.01(a)(iv) of the Acquisition Agreement, respectively, and seeking indemnification for the Chilean Tax.

Section 13.01(a)(i) of the Acquisition Agreement obligates Alcoa to indemnify Rank for:

> any Loss to the extent attributable to:  (i) any Taxes imposed on or with respect to any Transferred Subsidiary (or for which any Transferred Subsidiary is otherwise liable), as the case may be, *with respect to any Pre-Closing Date Tax Period* (including, for the avoidance of doubt, any interest, penalty or addition to Tax accruing after the Closing Date or any Taxes for which Seller is liable under this Section 13.01(a)(i)), including any such liability arising under principles of transferee or successor liability ....

(Acquisition Agreement, § 13.01(a)(i) (emphasis added)).

Rank also claims indemnification under Section 13.01(a)(iv) of the Acquisition Agreement, which requires Alcoa to indemnify Rank for:

> any Loss to the extent attributable to:  (iv) Taxes arising from or attributable to any Post-Signing Restructuring Action *other than* (A) any such Taxes for a Post-Closing Date Tax Period arising from or attributable to Purchaser or any of its Affiliates (including any Transferred Subsidiary) having a lower Tax basis in any Acquired Asset or in the stock of any Transferred Subsidiary that would otherwise have existed if no Post-Signing Restructuring Actions had been undertaken, *(B) any such Taxes for a Post-Closing Date Tax Period that would not have arisen but for any action taken by the Purchaser or any of its Affiliates (including any Transferred Subsidiary) other than in the ordinary course of business (and, for the avoidance of doubt, any restructuring conducted by Purchaser or any of its Affiliates (including any Transferred Subsidiary) after the applicable Closing shall not be in the ordinary course) and (C) any such Taxes for a taxable*

8

> *period (or portion thereof) beginning after December 31, 2008*
>
> ....

(Acquisition Agreement, § 13.01(a)(iv) (emphasis added)).

Section 13.01(b) provides, in pertinent part, that:

> From and after the applicable Closing, [Rank] shall cause the Transferred Subsidiaries to indemnify [Alcoa] and its Affiliates against and hold them harmless from any Loss to the extent attributable to (i) any Taxes imposed on or with respect to the Transferred Subsidiaries (or for which the Transferred Subsidiary is otherwise liable) for any *Post-Closing Date Tax Period* ..."

(Acquisition Agreement, § 13.01(b) (emphasis added)).   As discussed below, neither Section

13.01(a)(i) nor Section 13.01(a)(iv) entitle Rank to the relief it seeks.

## III.   ARGUMENT

### A.   Motion to Dismiss Standard

A complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it

does not "contain sufficient factual matter... to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

Although on a motion to dismiss a court must accept all factual allegations as true and

draw all inferences in the plaintiff's favor, *see Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10,

14 (2d Cir. 2001), *cert. denied*, 535 U.S. 1054 (2002), "a plaintiff's obligation to provide the

grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations,

internal quotations and alterations omitted).   Rather, "[f]actual allegations must be enough to

raise a right to relief above the speculative level, on the assumption that all the allegations in the

complaint are true (even if doubtful in fact)." *Id.* (citations omitted). "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted) (alteration original). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration original) (quoting *Twombly*, 550 U.S. at 557).

In reviewing a motion to dismiss, the Court may consider documents attached to the complaint as exhibits and any documents incorporated by reference into the complaint. *Smartix Int'l Corp. v. Mastercard Int'l, LLC*, No. 06-cv-5174 (GBD), 2008 WL 4444554, *2 (S.D.N.Y. Sept. 30, 2008). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). A plaintiff's "failure to include matters of which as pleaders they had notice and which were integral to their claim – and that they apparently most wanted to avoid – may not serve as a means of forestalling the district court's decision on [a] motion [to dismiss]. Otherwise, a plaintiff could evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach the [document] to the complaint or to incorporate it by reference." *Grosz v. Museum of Modern Art*, 772 F.Supp.2d 473, 497 (S.D.N.Y. 2010) (citation omitted).

**B.    Rank's Complaint Fails to State a *Prima Facie* Claim for Indemnification**

Rank's two-count Complaint purports to assert claims against Alcoa for breach of Sections 13.01(a)(i) and 13.01(a)(iv) of the Acquisition Agreement, respectively, sections that Rank maintains require that Alcoa indemnify it for the Chilean Tax. Rank has failed to plead

any valid indemnity claim against Alcoa.  Therefore, Rank's Complaint must be dismissed in its entirety and with prejudice.

1.     **Count I of Rank's Complaint Fails to State a Claim for Indemnification Pursuant to Section 13.01(a)(i) of the Acquisition Agreement**

In Count I, Rank alleges that Alcoa breached Section 13.01(a)(i) of the Acquisition Agreement, which obligates Alcoa to indemnify Rank for "Taxes imposed on or with respect to any Transferred Subsidiary..., with respect to any ***Pre-Closing Date Tax Period***...." (Acquisition Agreement, § 13.01(a)(i) (emphasis added)).   In turn, "Pre-Closing Date Tax Period" is defined in the Acquisition Agreement as follows, in pertinent part:

> "Pre-Closing Date Tax Periods" shall mean, with respect to any Transferred Subsidiary ... all Tax periods ending on or before the applicable Closing Date ... and the portion of any Straddle Tax Period ending on such applicable Closing Date."

(Acquisition Agreement, at p. 117).

Rank admits that the transaction closed in February 2008.  (Compl. ¶ 17).  Rank also admits that, under Chilean law, the Chilean Tax arose in and was owed with respect to the 2009 Chilean tax year. (*Id.* at ¶ 30).  The translated Final SSI Notice, included as an exhibit to the Complaint, reflects the same fact – and additionally reflects the assessment of a tax for the 2010 Chilean tax year, for which Rank does not seek indemnification.  (Compl. at Exh. 2, p. 1 (noting that "[w]e hereby inform you that the review of certain items of your tax statements, accounting records, and back up documents of tax years 2009 and 2010, has concluded.... The audit focused primarily in tax year 2009.")).  The conclusion is natural and straightforward:  the 2009 Chilean tax year is the only "Tax period" at issue, and it is indisputably a "Post-Closing Date Tax Period."  Thus, Alcoa has no indemnity obligation under Section 13.01(a)(i).

Rank seeks to avoid this straightforward conclusion by constructing a tortured explanation as to why the 2009 Chilean tax year should nevertheless be deemed a "Pre-Closing Date Tax Period", *i.e.,* a pre-February 2008 Tax Period. (Compl., ¶ 41). The length of that explanation – nearly one page – is emblematic of Rank's strained effort to circumvent the plain language of the Acquisition Agreement. Rank's attempt to re-write the clear and unambiguous language of the Acquisition Agreement is unavailing and Rank's claim for breach of Section 13.01(a)(i) must be dismissed.

Under New York law,[5] "[t]he fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." *Greenfield v. Philles Records, Inc.,* 780 N.E.2d 166, 170 (N.Y. 2002). "The best evidence of what parties to a written agreement intend is what they say in their writing." *Id.* (citations omitted). Thus, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Id.*; *see also R/S Assoc. v. New York Job Dev. Auth.,* 771 N.E.2d 240, 242 (N.Y. 2002) ("We have long adhered to the sound rule in the construction of contracts, that where the language is clear, unequivocal and unambiguous, the contract is to be interpreted by its own language.") (citation and internal quotations omitted). "Courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." *Dystal, Inc. v. Hub Props. Trust,* 92 A.D.3d 826, 827 (N.Y.A.D. 2012) (citation omitted).

Further, New York law requires that contractual indemnity provisions like those at issue in this case must be strictly construed to avoid reading into the contract a duty which the parties

---

[5]    Section 17.12 of the Acquisition Agreement provides that the Acquisition Agreement "shall be governed by, and construed in accordance with, the internal laws of the State of New York applicable to agreements made and to be performed entirely within such State." (Acquisition Agreement, § 17.12).

did not intend to be assumed. *See, e.g., Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 548 N.E.2d 903, 905 (N.Y. 1989) ("When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed."); *2632 Realty Dev. Corp. v. 299 Main St., LLC*, 94 A.D.3d 743, 745-46 (N.Y.A.D. 2012) ("[I]n the absence of a legal duty to indemnify, a contract for indemnification should be strictly construed to avoid imputing any duties which the parties did not intend to assume."); *LaFleur v. MLB Indus., Inc.*, 52 A.D.3d 1087, 1088 (N.Y.A.D. 2008) ("When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed."); *Goldwasser v. Geller*, 279 A.D.2d 297, 297 (N.Y.A.D. 2001) ("An agreement to indemnify must be strictly construed and should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances, *i.e.*, there must be an unmistakable intention to indemnify.") (citations and internal quotations omitted).

Section 13.01(a)(i), by its terms, clearly and unambiguously requires Alcoa to indemnify Rank only for "Taxes imposed on or with respect to... any Pre-Closing Date Tax Period[.]" By Rank's own admission, the Chilean Tax was imposed with respect to Chile's 2009 tax year, which is after the February 29, 2008 Closing.[6] As such, the Chilean Tax is outside Alcoa's indemnification obligation under the plain language of Section 13.01(a)(i) and Rank is not entitled to indemnification under that section. Other terms of the Acquisition Agreement support Alcoa's straightforward interpretation. For instance, Section 13.01(b) provides, in pertinent part,

---

[6]     Actually, as noted, taxes were also imposed with respect to the 2010 Chilean tax year – which further illustrates that the timing of the 2008 Loan Agreement's execution does not define the "Tax period" at issue.

that "[Rank] shall cause the Transferred Subsidiaries to indemnify [Alcoa]... against and hold them harmless from any Loss to the extent attributable to (i) any Taxes imposed on or with respect to the Transferred Subsidiaries... for any ***Post-Closing Date Tax Period***...." (Acquisition Agreement, § 13.01(b) (emphasis added)).   Under the plain language of the Acquisition Agreement, the 2009 Chilean tax year is a "Post-Closing Date Tax Period."

Nothing in the Acquisition Agreement supports Rank's position that Section 13.01(a)(i) is applicable here.  If there were such support, Rank would not, for example, need to struggle with a strained, one-page long discussion attempting to show that, because Chilean tax law treats the 2009 tax year as relating to fiscal activities in calendar year 2008, the 2009 Chilean tax year is transformed into a "Pre-Closing Date Tax Period," and is not "Post-Closing Date Tax Period." (Compl., ¶ 41). Both Rank and Alcoa knew that by transferring Latin American subsidiaries, including a Chilean entity, Chilean tax law would be implicated by the acquisition.  Rank could have sought a contract that reflected its current position that the phrase "<u>Pre</u>-Closing Date Tax Period" includes a <u>post</u>-closing date tax year.  But the parties did not write that contract, and Rank cannot rewrite the Acquisition Agreement in its Complaint.  Therefore, Count I fails to state a claim for indemnification and must be dismissed.

### 2.    Count II of Rank's Complaint Fails to State a Claim for Indemnification Pursuant to Section 13.01(a)(iv) of the Acquisition Agreement

In Count II, Rank seeks indemnification pursuant to Section 13.01(a)(iv) of the Acquisition Agreement.   As Rank admits, Alcoa's indemnification obligation in Section 13.01(a)(iv) is conditional and obligates Alcoa to indemnify Rank for "[t]axes arising from or attributable to any Post-Signing Restructuring Action" subject to three exceptions. (Compl., ¶ 54).  Rank's Complaint ignores the conditional nature of Alcoa's duty to indemnify it, and

includes only boilerplate allegations that the enumerated exceptions do not apply. Rank's conclusory allegations fall far short of satisfying its pleading burden.

It is well-established that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to meet this standard, and need not be accepted as true in deciding a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although for the purposes of [a] motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."). A complaint consisting of merely conclusory allegations unsupported by factual assertions cannot meet the liberal requirements of Fed. R. Civ. P. 12(b)(6) and must be dismissed. *De Jesus v. Sears Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir. 1996).

Rank's Complaint does not meet this standard. While Rank's entitlement to relief under Section 13.01(a)(iv) is explicitly conditioned on the non-applicability of the exceptions enumerated in that section, Rank makes no effort whatsoever to meet its duty under *Twombly* and *Iqbal* to plead facts that, if true, would establish that those exceptions do not apply. Instead, Rank's Complaint includes only boilerplate and conclusory allegations that the exceptions do not apply, stating that:

- "Pursuant to Section 13(a)(iv) of the Acquisition Agreement, Alcoa is obligated to indemnify Rank for all such liabilities, ***with only three narrow exceptions, none of which applies here.***" (Compl., ¶ 42) (emphasis added);

- "Alcoa agreed in Section 13.01(a)(iv) of the Acquisition Agreement to indemnify Rank and hold Rank harmless for any 'Loss' attributable to '[t]axes

arising from or attributable to any Post-Signing Restructuring Action,' *with certain exceptions not applicable here.*" (Compl., ¶ 54) (emphasis added).

Rank's threadbare and conclusory allegations are insufficient to meet its pleading burden and simply do not provide the grounds of Rank's claimed entitlement to indemnity against Alcoa under Section 13.01(a)(iv).

Indeed, contrary to Rank's assertion that the exceptions are "not applicable here", two of the three stated exceptions do apply and preclude Rank's claimed right to indemnification.  First, subsection (C) provides that Alcoa owes no indemnification for "[t]axes for a taxable period (or portion thereof) beginning after December 31, 2008[.]"   (Acquisition Agreement, § 13.01(a)(iv)(C)).  Because the Chilean Tax relates to the 2009 tax year, this exception applies.

Second, subsection (B) excepts from Alcoa's potential indemnification responsibility taxes for a "Post-Closing Date Tax Period that would not have arisen but for any action taken by the Purchaser or any of its Affiliates[.]"  Relating to this exception, Rank has taken a strategic approach to pleading facts, and more to the point not pleading facts, with respect to the Loan Amendment.   Rank knows the Loan Amendment is significant – because Rank's Complaint takes the time to acknowledge it, and also attempts to cast the Loan Amendment in a favorable light.   But tellingly, the farthest Rank can go is to allege that the Final SSI Notice "did not *mention* the Loan Amendment." (Compl., ¶ 39) (emphasis added)).  Rank is silent as to what other discussions or correspondence it had, if any, regarding the Loan Amendment with SSI, or whether SSI took any positions during the audit with respect to the Loan Amendment and the Amendment's role in the imposition of the Chilean Tax.

Notably, despite its submission of a Complaint that is very specific and detailed in numerous respects, and that is laden with documentary exhibits, Rank never alleges that the Loan Amendment played no causal role in the imposition of the Chilean Tax and attaches only a single

communication from SII on the subject of the Chilean Tax.   Nor does Rank allege that the Chilean Tax would have been imposed by SSI whether or not the 2008 Loan had been repaid prior to the audit, as it should have been pursuant to the terms of the 2008 Loan Agreement. Instead, other than its cryptic contention that the Final SSI Notice does not "mention" the Loan Amendment, Rank's Complaint is silent on this topic.

If Rank had a good faith basis to at least make these allegations, it surely would have done so – because clearly, Rank is aware that the Loan Amendment is a significant issue in this litigation.   Instead, Rank was careful to say very little about the Loan Amendment, and relies instead on conclusory assertions that the Section 13.01(a)(iv) exceptions "do not apply" in this case.   This is precisely the sort of pleading strategy that *Twombly* and *Iqbal* prohibit.   Rank is required to plead facts that, if true, would establish its entitlement to relief, and the Complaint does not meet that standard.   For that reason, Count II, as pled, fails to state a claim upon which relief may be granted and must be dismissed.[7]

## IV.   CONCLUSION

For all of the foregoing reasons, Defendant Alcoa Inc. respectfully requests that the Court enter an order (i) dismissing Plaintiff Rank Group Limited's Complaint in its entirety and with prejudice, and (ii) awarding Alcoa such other and further relief as the Court deems just and proper.

---

[7]     The Loan Amendment also constitutes a breach of the Purchaser Covenant in Section 9.02 of the Acquisition Agreement, under which Rank was obligated to "duly, promptly and faithfully pay, honor, perform and discharge all the Assumed Liabilities." This breach negates any indemnification obligation that Alcoa otherwise may have owed to Rank pursuant to the Acquisition Agreement.   Alcoa is not raising Rank's breach of Section 9.02 as a basis for dismissal of Rank's Complaint in this Motion, but reserves the right to raise this issue, and any other potentially applicable defenses, should the lawsuit proceed.

Dated:   New York, New York
         July 9, 2012

                                       _s/Peter N. Flocos_____
                                       Peter N. Flocos
                                       K&L GATES LLP
                                       599 Lexington Avenue
                                       New York, NY 10022-6030
                                       (212) 536-3900
                                       (212) 536-3901 (fax)
                                       Email:  peter.flocos@klgates.com
                                       and
                                       Thomas E. Birsic (admitted *pro hac vice*)
                                       Andrew R. Stanton (admitted *pro hac vice*)
                                       K&L GATES LLP
                                       K&L Gates Center
                                       210 Sixth Avenue
                                       Pittsburgh, PA 15221
                                       (412) 355-6500
                                       (412) 355-6501 (fax)


                                       *Attorneys for Defendant Alcoa Inc.*