UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                    :
RANK GROUP LIMITED,                                 :
                                                    :           12 Civ. 3769 (GBD)
                            Plaintiff,              :
                                                    :               ECF Case
            -against-                               :
                                                    :
ALCOA INC.,                                         :
                                                    :
                            Defendant.              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


# PLAINTIFF'S MEMORANDUM OF LAW IN
# OPPOSITION TO DEFENDANT'S MOTION TO DISMISS


Gary W. Kubek (gwkubek@debevoise.com)
Vanessa De Simone (vdesimo@debevoise.com)
Joshua Weigensberg (jweigens@debevoise.com)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000

New York, New York
July 30, 2012

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ............................................................................................2

I.  The Acquisition Agreement ............................................................................2

    A.  Section 13.01(a)(i) ..........................................................................3

    B.  Section 13.01(a)(iv) .........................................................................4

    C.  The 2008 Loan Transaction ...............................................................4

II.  The Chilean Tax...........................................................................................5

ARGUMENT .............................................................................................................6

I.  First Cause of Action: Breach of Section 13.01(a)(i) ...........................................6

II.  Second Cause of Action: Breach of Section 13.01(a)(iv)......................................9

CONCLUSION...........................................................................................................14

i

## TABLE OF AUTHORITIES

CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..................................................................2, 10

*Ayers v. Ayers*, 92 A.D.3d 623 (2d Dep't 2012) ...............................................................8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................2, 10

*Bradley v. Earl B. Feiden, Inc.*, 8 N.Y.3d 265 (2007)......................................................9

*Clearmont Prop., LLC v. Eisner*, 58 A.D.3d 1052 (3d Dep't 2009)...............................11

*David v. City Natl. Sec. Co.*, 174 A.D. 593 (1st Dep't 1916) .......................................11

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104 (2d Cir. 2010)...................................13

*Dobyns v. United States*, 91 Fed. Cl. 412 (Fed. Cl. 2010) ...........................................10

*Erickson v. Pardus*, 551 U.S. 89 (2007) .....................................................................10

*Furia v. Furia*, 116 A.D.2d 694 (2d Dep't 1986) ........................................................11

*Greenwich Capital Fin. Prods., Inc. v. Negrin*, 74 A.D.3d 413 (1st Dep't 2010)..........9

*Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310 (2d Cir. 2011)...................................10

*Rodrigues v. N & S Bldg. Contrs., Inc.*, 5 N.Y.3d 427 (2005) .......................................9

*Sheraton Op. Corp. v. Castillo Grand, LLC*, 34 Misc.3d 1207(A), 2011 WL
6973239 (N.Y. Sup. Nov. 18, 2011)...................................................................11

*Sicari v. J.C. Penney Corp., Inc.*, No. 05-Civ-5392 (LMM), 2005 WL 3440693
(S.D.N.Y. Dec. 14, 2005)...................................................................................10

*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)....................................................11


OTHER AUTHORITIES

Federal Rule of Civil Procedure 8(a) ......................................................................9, 11

23713646v1

Plaintiff Rank Group Limited ("Rank") respectfully submits this memorandum of law in opposition to Defendant Alcoa Inc.'s ("Alcoa") motion to dismiss Rank's complaint (the "Complaint").

## PRELIMINARY STATEMENT

Rank filed this action to enforce certain indemnification provisions of the Acquisition Agreement by which Rank agreed to purchase various Alcoa subsidiaries – provisions that, by their plain and unambiguous terms, require Alcoa to pay for taxes (i) imposed on those subsidiaries with respect to any Pre-Closing Date Tax Period (including any taxes that would have been due if a tax period that includes the February 29, 2008 Closing Date of the acquisition had ended on the Closing Date), Section 13.01(a)(i); and/or (ii) resulting from restructuring activities undertaken by Alcoa that resulted in tax for any period that began no later than December 31, 2008, Section 13.01(a)(iv).  The Complaint clearly explains these provisions and how Alcoa breached them: specifically, Rank alleges that Alcoa has refused to pay a Chilean tax assessment of more than $10 million for calendar year 2008, even though the event giving rise to that tax – a January 2008 intercompany loan transaction – took place (a) before the Closing and (b) was part of Alcoa's restructuring actions.

In its motion to dismiss, Alcoa makes two arguments seeking to avoid its contractual responsibility for this tax, both of which fail.  With respect to Rank's first claim, Alcoa argues that the Chilean tax does not fall within Section 13.01(a)(i), which covers all "Taxes imposed . . . with respect to any Pre-Closing Date Tax Period," solely because the Chilean taxing authority uses the term "Tax Year 2009" to describe the taxable period from January 1, 2008 through December 31, 2008.  In other words, even though the Complaint alleges that the taxable event took place before the Closing and the tax would have been due if the tax period had ended on the Closing Date, Alcoa argues that it is not liable simply because the Chilean tax authority identifies

"Tax Years" based on the year in which the tax return is required to be filed rather than the year in which the taxes arose – thus, "Tax Year 2009" relates to calendar year 2008, etc.  Instead of acknowledging this clear statutory convention, which is alleged repeatedly in the Complaint (at ¶¶ 30, 35, 36, 37, 38, 41), Alcoa engages in linguistic legerdemain that finds no support in the language of the Acquisition Agreement, which plainly provides that Alcoa must indemnify Rank for all taxes imposed "with respect to a Pre-Closing Date Tax Period," regardless of when the tax is actually assessed or what label the taxing authority might attach to that tax period.

Alcoa argues that Rank's second claim must be dismissed because Rank failed to allege sufficiently why the contractual exceptions to the indemnification provisions in Section 13.01(a)(iv) do not excuse Alcoa from liability.  This argument ignores Rank's actual pleading, which provides ample notice not only of the existence of these exceptions, but also of the factual reasons why they are not applicable.  The Complaint easily meets the pleading requirements set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), as well as the requirements of New York contract law, which does not require plaintiffs to plead the non-applicability of contractual exceptions.

## STATEMENT OF FACTS

### I.      The Acquisition Agreement

On December 21, 2007, Rank and Alcoa entered into an agreement (the "Acquisition Agreement") whereby Rank agreed to pay Alcoa approximately $2.7 billion for Alcoa's Packaging & Consumer Business.  Compl. ¶¶ 1, 15.  Among the numerous domestic and foreign "Transferred Subsidiaries" that Rank acquired in the sale were Alcoa Latin American Holdings Corporation, later renamed CSI Latin American Holdings Corporation ("CSI LAHC"), and Alusud Embalajes Chile Ltda. ("Alusud Chile").  Compl. ¶ 16.

2

Rank and Alcoa understood that, given the inevitable delay between the time when a corporate act causes a tax to be incurred and when the tax is assessed or paid, some subsidiaries acquired by Rank would likely be required to pay taxes *after* the February 29, 2008 Closing Date that were incurred as a result of acts occurring *on or before* the Closing Date, when they were still owned by Alcoa.  Compl. ¶ 2; Compl. Ex. 1 at 80.  Further, they recognized that Alcoa would take certain Post-Signing Restructuring Actions between the execution of the Acquisition Agreement and the Closing, including transferring assets between Alcoa entities, which might also give rise to taxes after the Closing.  Compl. ¶¶ 3, 17; Compl. Ex. 1 at 43, 80.  The parties agreed that Rank should not bear responsibility for such taxes and accordingly provided in Sections 13.01(a)(i) and 13.01(a)(iv), respectively, that Alcoa would indemnify Rank for tax liabilities incurred before the Closing or attributable to its Post-Signing Restructuring Actions.  Compl. ¶¶ 2-3; Compl. Ex. 1 at 80.

### A.      Section 13.01(a)(i)

Section 13.01(a)(i) required Alcoa to indemnify Rank for "Taxes imposed on or with respect to any Transferred Subsidiary (or for which any Transferred Subsidiary is otherwise liable), as the case may be, with respect to any Pre-Closing Date Tax Period."  Compl. ¶ 19; Compl. Ex. 1 at 80.  The Acquisition Agreement defined "Pre-Closing Date Tax Period" as "all Tax periods ending on or before the applicable Closing Date . . . and the portion of any Straddle Tax Period ending on such applicable Closing Date."  Compl. ¶ 41; Compl. Ex. 1 at 116.  A "Straddle Tax Period" was defined as "any complete Tax period that includes but does not end on the applicable Closing Date . . . ."  Compl. ¶ 41; Compl. Ex. 1 at 118.  Thus, Alcoa was responsible for taxes imposed with respect to the portion of calendar year 2008 (a Straddle Tax Period) through the February 29, 2008 Closing Date.

3

**B.      Section 13.01(a)(iv)**

Section 13.01(a)(iv), which is not limited to taxes imposed with respect to a Pre-Closing

Date Tax Period,  required Alcoa to indemnify Rank for:

> Taxes arising from or attributable to any Post-Signing
> Restructuring Action other than (A) any such Taxes for a Post-
> Closing Date Tax Period arising from or attributable to Purchaser
> or any of its Affiliates (including any Transferred Subsidiary)
> having a lower Tax basis in any Acquired Asset or in the stock of
> any Transferred Subsidiary than would otherwise have existed if
> no Post-Signing Restructuring Actions had been undertaken, (B)
> any such Taxes for a Post-Closing Date Tax Period that would not
> have arisen but for any action taken by the Purchaser or any of its
> Affiliates (including any Transferred Subsidiary) other than in the
> ordinary course of business (and, for the avoidance of doubt, any
> restructuring conducted by Purchaser or any of its Affiliates
> (including any Transferred Subsidiary) after the applicable Closing
> shall not be in the ordinary course) and (C) any such Taxes for a
> taxable period (or portion thereof) beginning after December 31,
> 2008 . . . .

Compl. ¶ 22; Compl. Ex. 1 at 80.

**C.      The 2008 Loan Transaction**

One of the Post-Signing Restructuring Actions designed and executed by Alcoa was a

pre-Closing transfer of approximately $34 million from Alusud Chile to its direct parent

company, CSI LAHC (the "2008 Loan Transaction"), which was memorialized in a loan

agreement dated as of January 29, 2008 (the "2008 Loan Agreement").  Compl. ¶¶ 4, 24, 25.

This transaction was effected by Alcoa despite the advice of its tax advisors, who warned Alcoa

that structuring the transaction as a subsidiary-to-parent loan created a significant risk of a

substantial Chilean tax liability.  *Id*. ¶¶ 24, 26.

The 2008 Loan Agreement drafted by Alcoa expressly contemplated amendments.  *Id.*

¶ 28.  Alusud Chile and CSI LAHC later executed such an amendment, which, among other

things, modified the interest rate of the loan and amended its term.  *Id.*

4

## II.     The Chilean Tax

In September 2010, the Chilean tax authority, Servicio de Impuestos Internos ("SII"),

initiated a tax audit focused on Alusud Chile's commercial activities during calendar years 2008

and 2009, which, under the SII's vernacular, corresponded to "tax years 2009 and 2010."[1]

*Id.* ¶ 30; Compl. Ex. 2, "Notice Letter of Review Completion" (English translation) at 1-2.

During the audit, the SII asserted that the 2008 Loan Transaction constituted a profit

distribution from Alusud Chile to CSI LAHC and that, under Chilean tax law, both entities were

therefore subject to a dividend withholding tax.  Compl. ¶ 33.  The SII adhered to this position in

its final Notice Letter of Review Completion (the "Final Notice"), which did not attribute any tax

liability to (or even mention) the Loan Amendment.  *Id.* ¶ 39; Compl. Ex. 2.

Following significant negotiations to reduce the penalties demanded by SII, Alusud Chile

and CSI LAHC agreed to, and did, pay taxes for tax year 2009 (relating to calendar year 2008)

because of the 2008 Loan Transaction in an amount of US $10,139,882.24 (the "Chilean Tax").

*Id.* ¶ 38.  Rank has repeatedly demanded indemnification of the Chilean Tax, but Alcoa has

refused to reimburse Rank for any part of it.  *Id.* ¶ 44.

On May 11, 2012, Rank filed the Complaint, setting forth the facts establishing that it is

entitled to relief for Alcoa's breaches of Sections 13.01(a)(i) and 13.01(a)(iv).

---

[1]     The fact that SII was auditing "tax years 2009 and 2010" in September 2010 confirms that the "tax year" refers to the year in which the tax return is required to be filed, not the year in which the tax arose, as SII obviously could not have audited calendar year 2010 three months before that year ended.

5

## ARGUMENT

**I.    First Cause of Action: Breach of Section 13.01(a)(i)**

Alcoa's sole basis for seeking dismissal of the first cause of action is that Rank cannot recover under Section 13.01(a)(i) because the SII uses the label "tax year 2009" to refer to the tax return covering events that occurred in "commercial year 2008."  As explained below, this argument is meritless.

Section 13.01(a)(i) of the Acquisition Agreement plainly entitles Rank to indemnification for all tax liabilities incurred by Alusud Chile and CSI LAHC relating to any time prior to the Closing.  It provides that Alcoa shall indemnify Rank for "Taxes imposed on or with respect to any Transferred Subsidiary (or for which any Transferred Subsidiary is otherwise liable), as the case may be, with respect to any Pre-Closing Date Tax Period."  Compl. ¶ 19; Compl. Ex. 1 at 80.  The term Pre-Closing Date Tax Period includes not only tax periods "ending on or before the applicable Closing Date," but also (because the Closing did not occur on December 31) "the portion of any Straddle Tax Period ending on such applicable Closing Date."  Compl. ¶ 41; Compl. Ex. 1 at 116.  A Straddle Tax Period is "any complete Tax period that includes but does not end on the applicable Closing Date."  Compl. ¶ 41; Compl. Ex. 1 at 118.  The tax for a Pre-Closing Tax Period thus includes "the amount that would be payable if the relevant Tax period ended on the applicable Closing Date."  Compl. ¶ 41; Compl. Ex. 1 at 83.  Hence, under Section 13.01(a)(i), Alcoa must indemnify Rank for taxes imposed with respect to any tax period that includes but does not end on the Closing Date, February 29, 2008, in the amount that would be due if that tax period ended on February 29, 2008.

The Complaint alleges clearly that (i) the 2008 Loan Transaction occurred prior to February 29, 2008, Compl. ¶¶ 4, 24, (ii) the term "tax year 2009," as used by the SII in the Final Notice refers to the 2008 commercial year, which was a Straddle Tax Period, *id.* ¶¶ 30, 35 & Ex.

2, and (iii) the "Chilean Tax was imposed on or with respect to Alusud Chile and CSI LAHC—Transferred Subsidiaries under the Acquisition Agreement—as a result of the 2008 Loan Transaction . . . ."  Compl. ¶ 49.  Plaintiff does not, and cannot, contest the truth of these allegations in this motion.

Instead, Alcoa's Memorandum of Law ("Def. Mem.") offers only a baseless linguistic argument that, because the SII uses the term "tax year 2009" (the year when the tax return for 2008 was filed) when referring to tax liabilities incurred during the 2008 calendar year, the taxes that the SII imposed relate to a "Tax Period" in 2009, not 2008.  Def. Mem. at 11 (". . . [T]he 2009 Chilean tax year is the only 'Tax period' at issue, and it is indisputably a 'Post-Closing Date Tax Period.'").  This argument is factually and legally wrong, and in any event is inconsistent with the Complaint's allegations, which must be accepted as true on this motion.

Rank clearly and repeatedly alleges that the SII's "tax year 2009" relates to activities occurring during calendar year 2008.  Compl. ¶¶ 30, 35-38, 41.  The SII's Final Notice, attached to the Complaint as Exhibit 2, confirms this meaning, as the discussion under the heading "TAX YEAR 2009" relates exclusively to activities that occurred in 2008.  Compl. Ex. 2 at 1-2. Specifically, the discussion focuses on the loan from Alusud Chile to CSI LAHC made "[i]n commercial year 2008" and evidenced by a loan agreement entered into "[o]n January 29, 2008." *Id*.  The discussion in the section of the Final Notice headed "TAX YEAR 2009" does not mention any activity taking place in the 2009 calendar year.  Thus, taxes imposed for TAX YEAR 2009 clearly were incurred as a result of activities during 2008.[2]

---

[2]   Alcoa suggests that its argument is somehow helped by the fact that "Rank does not seek indemnity for taxes imposed for the 2010 tax year."  Def. Mem. at 2; *see also id.* at 11, 13. In fact, Rank is not seeking indemnification for taxes imposed for "tax year 2010" because that "tax year" relates to events that occurred in calendar year 2009, for which Rank has no

23713646v1

Alcoa's insistence that the SII's use of the term "tax year 2009" excuses it from its Section 13.01(a)(i) obligation rests on the false (and illogical) premise that the parties' agreed allocation of tax liability did not depend on when the action of the Transferred Subsidiaries gave rise to a tax liability.  Alcoa's argument would lead to absurd and commercially unreasonable results because it would have no indemnification obligation under Section 13.01(a)(i) for taxes incurred as a result of any pre-Closing commercial activity in Chile in 2008.  This is not only inconsistent with the plain meaning of the Agreement, but also makes no business sense because it would make Rank responsible for taxes imposed for calendar year 2008 as a result of activities undertaken by the Transferred Subsidiaries when they were still owned by Alcoa, for Alcoa's economic benefit.  Alcoa would have liability only for taxes in "tax year 2008," which would relate to commercial activity that took place in 2007.  This is not only a commercially absurd reading of the provisions, but would render meaningless the portion of the definition of Pre-Closing Date Tax Period that makes Alcoa responsible for taxes imposed for "the portion of any Straddle Tax Period ending on such applicable Closing Date."  Compl. Ex. 1 at 116.

Alcoa's argument also would lead to the absurd and commercially unreasonable conclusion that Section 13.01(a)(i) protects Rank only in countries whose tax laws and taxing authorities used terminology referring to "tax year 2008" when imposing taxes that relate to liabilities incurred in 2008.  Subjecting Rank's indemnification right to such variation based on the terminology used in the 24 countries where the Transferred Subsidiaries were located would impermissibly "write into a contract conditions that the parties did not insert."  *Ayers v. Ayers*, 92 A.D.3d 623, 624 (2d Dep't 2012).

---

indemnification right under the Agreement.  That is of course entirely consistent with Rank's claim for indemnification of the taxes that related to pre-Closing events in 2008.

It is a fundamental principle of contract interpretation under New York law that courts must seek to avoid an interpretation that would render a contractual term, including an indemnification provision, meaningless, absurd or commercially unreasonable.  *See Bradley v. Earl B. Feiden, Inc.*, 8 N.Y.3d 265, 274 (2007) ("A contract that provides for indemnification will be enforced as long as the intent to assume such a role is sufficiently clear and unambiguous. A court must also be careful not to interpret a contracted indemnification provision in a manner that would render it meaningless.") (internal citations and quotations omitted); *Rodrigues v. N & S Bldg. Contrs., Inc.*, 5 N.Y.3d 427, 432 (2005); *Greenwich Capital Fin. Prods., Inc. v. Negrin*, 74 A.D.3d 413, 415 (1st Dep't 2010).  That principle forecloses the interpretation urged by Alcoa here, and Alcoa's motion to dismiss Count I of the Complaint should be denied.[3]

## II.      Second Cause of Action: Breach of Section 13.01(a)(iv)

Alcoa's sole argument in support of dismissing the Second Cause of Action (other than repeating its baseless argument with respect to the First Cause of Action, Def. Mem. at 16) is that Rank failed to plead adequately that the three contractual exceptions to Alcoa's indemnification obligation under Section 13.01(a)(iv) do not apply.  However, the Complaint plainly alleges both the existence and the non-applicability of these exceptions.  The Federal Rules of Civil Procedure do not impose on Rank the burden of pleading facts that negate the existence of all possible circumstances in which Alcoa might assert the applicability of one of these exceptions.

Federal Rule of Civil Procedure 8(a) requires a plaintiff to provide a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Under Rule 8(a), "[s]pecific facts are not necessary; the statement need only give the defendant fair

---

[3]      While Rank believes, as explained above, that the "Tax Year" issue raised by Alcoa is a meritless red herring, at most it raises a factual issue to be determined at trial rather than grounds for a motion to dismiss.

notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quotation marks omitted); *see also Twombly*, 550 U.S. at 555.  Contrary to Alcoa's suggestion that Rank should have pleaded facts about all of the "discussions or correspondence it had, if any, regarding the Loan Amendment with SII," Def. Mem. at 16, *Twombly* expressly holds that "detailed factual allegations" are not necessary for a valid complaint.  *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678; *see also Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 323 (2d Cir. 2011).  Rather, the complaint need provide "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

This rule applies fully in contract cases.  As one court observed after reviewing recent breach of contract cases from various federal district courts, "these cases . . . collectively belie the notion that a plaintiff must jump through considerably more hoops now [after *Twombly* and *Iqbal*], in pleading a breach of contract claim, than was the case previously." *Dobyns v. United States*, 91 Fed. Cl. 412, 430 (Fed. Cl. 2010) (denying motion to dismiss contract claims and noting that "far less detailed" contract claims frequently survive).

In addition, Rule 8(a) speaks only to *how* a plaintiff must plead the elements of its claims, not *what* elements a plaintiff must plead to set forth a prima facie case.  *Sicari v. J.C. Penney Corp., Inc.*, No. 05-Civ-5392 (LMM), 2005 WL 3440693, at *2, n. 1 (S.D.N.Y. Dec. 14, 2005) (The Federal Rules "govern how a claim must be pleaded," but "a state's law will govern how the claim must be proved.").  Those required elements are set forth by the governing substantive law, which in this case is New York contract law.  *See* Compl. Ex. 1 at 102 (designating New York as the law governing the Acquisition Agreement).

Under New York law, the elements of a breach of contract action are simply: (1) formation of a contract between the parties, (2) plaintiff's performance, (3) defendant's

10

failure to perform, and (4) resulting damages.  *Clearmont Prop., LLC v. Eisner*, 58 A.D.3d 1052,

1055 (3d Dep't 2009);  *Furia v. Furia*, 116 A.D.2d 694, 695 (2d Dep't 1986).  It has long been

established that a plaintiff is *not* required to demonstrate the non-applicability of each contractual

exception that might excuse the defendant from liability:

> The general rule is that where a cause of action, defense or counterclaim is founded upon
> a liability which would exist unless it falls within the scope of some exception clause in
> the contract between the parties, it is not necessary for the pleader to show that the
> exception does not apply; on the contrary, it is for the person claiming the benefit of such
> clause to plead and prove it.

*David v. City Natl. Sec. Co.*, 174 A.D. 593, 598 (1st Dep't 1916); *see also Sheraton Op. Corp. v.*

*Castillo Grand, LLC*, 34 Misc.3d 1207(A), 2011 WL 6973239, at *59 (N.Y. Sup. Nov. 18, 2011)

(concluding that where a Florida contract provided that plaintiff "is entitled to be indemnified

except in the event of the carefully and narrowly defined exception for Grossly Negligent or

Willful Acts . . . the burden is on [defendant] to *plead and prove* the applicability of the Grossly

Negligent or Willful Acts exception") (emphasis added).

Because New York law does not require a plaintiff to establish the non-applicability of

contractual exceptions, the federal rules do not require a plaintiff to plead the non-applicability

of such exceptions.  *See* Fed. R. Civ. P. 8(a) (limiting required statement to facts necessary to

show "entitle[ment] to relief"); *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 511-12 (2002)

(noting that it would be "incongruous to require a plaintiff, in order to survive a motion to

dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits").

Even if New York law did require plaintiffs to plead the non-applicability of contractual

exceptions, Rank would have fulfilled, and indeed exceeded, its pleading burden.  Rank

acknowledged the exceptions, alleged that none of them was applicable, and attached the entire

Acquisition Agreement to its Complaint.  Compl. ¶¶ 42, 54, Ex. 1.  Alcoa's motion, which

contends that two exceptions are applicable, Def. Mem. at 16, demonstrates that Rank has put

11

Alcoa on adequate notice of the contractual exceptions and Rank's position that they do not apply.[4]

Rank also alleged additional facts which, taken as true on this motion, establish that the exceptions relied on by Alcoa do not apply.  With respect to the exception in Section 13.01(a)(iv)(C) for any tax "for a taxable period (or portion thereof) beginning after December 31, 2008 . . . ," the Complaint alleges that the tax for which it seeks indemnification resulted from the Loan Transaction in January 2008, which was a Post-Signing Restructuring Action covered by Section 13.01(a)(iv), Compl. ¶¶ 4, 24-39, 42, 55, and which the SII "considered as taxable income . . . as of December 31, 2008."  Compl. Ex. 2 at 2.  The Complaint thus alleges facts showing that the Chilean Tax was not "for a taxable period (or portion thereof) beginning after December 31, 2008," and accordingly was not within the exception of Section 13.01(a)(iv)(C).[5]

Likewise, Rank provided clear notice of why the exception in Section 13.01(a)(iv)(B) – which excuses Alcoa from its indemnification obligation where a tax is for a *Post-Closing Date Tax Period and* "would not have arisen but for any action taken by the Purchaser or any of its Affiliates (including any Transferred Subsidiary) other than in the ordinary course of business" – is not applicable.  Compl. Ex. 1 at 80.  First, Rank's allegation that the tax was imposed for a Pre-Closing Date Tax Period negates the application of this exception, which applies only to "Taxes for a Post-Closing Date Tax Period."  Second, Rank alleges that the cause of the tax was

---

[4]    Alcoa does not argue that the exception in Section 13.01(a)(iv)(A) applies.

[5]    As Alcoa acknowledges, Def. Mem. at 13 n.6, Rank does not seek indemnification of taxes that resulted from the consequences of the Loan Agreement but were not incurred until 2009 (and thus were assessed for the Chilean tax year 2010), because that was "a taxable period . . . beginning after December 31, 2008."  Compl. Ex. 1 at 80 (Section 13.01(a)(iv)(C)).

23713646v1

the 2008 Loan Transaction undertaken as a Post-Signing Restructuring Action by Alcoa, not any action taken by Rank or any of its Affiliates.  Compl. ¶¶ 4, 5, 24-26, 33-39, 41-42, 49, 55.  Rank had no obligation to plead facts negating every conceivable action it might have taken in Chile or elsewhere that could have caused the imposition of the tax.

Nevertheless, because Alcoa asserted, during the parties' prior discussions, that the Chilean Tax resulted from the Loan Amendment, the Complaint acknowledges that the 2008 Loan Agreement was later amended, Compl. ¶ 28, and alleges facts showing that the Loan Amendment does not trigger the exception in Section 13.01(a)(iv)(B).  *Id.* ¶¶ 33-39.  In addition, Rank attached as Exhibit 2 to its Complaint the entire Final Notice (both the original Spanish version and an English translation), which may be considered with the facts alleged in the Complaint for the purposes of Defendant's 12(b)(6) motion.  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

The Final Notice, which Alcoa misleadingly refers to as merely "a single communication from SII," Def. Mem. at 16-17, was the operative document that explained the basis for and the calculation of the Chilean Tax.  That notice states,

> [T]his Authority concluded that the [rule] indicated in the Article 21 of the income tax law is applicable, for the loans made are in fact, withdrawals and therefore should be subject to the Additional Withholding Tax.  The reasons are as follows: . . . In commercial year 2008, Alusud Chile taxpayer . . . granted a loan to its head office ALAHC, through the direct delivery of remittances for US$ 3,002,166, and indirectly, through Alusud Uruguay and Alusud Ali Inc, the amount of US$ 31,407,384.

Compl. Ex. 2 at 1-2.  Thus, the Final Notice expressly attributed the tax to the Loan Transaction and did not rely on or even mention the Loan Amendment.

While Alcoa argues that Rank's allegations are "carefully-pled" and "precisely-worded" (usually viewed as virtues, not vices), Def. Mem. at 7, as well as "cryptic," *id.* at 17, there is nothing "cryptic" about the allegation that the Final Notice "did not mention the Loan

Amendment." Compl. ¶ 39.  The absence of any mention of the Loan Amendment in the Final

Notice belies any suggestion that the SII imposed the tax because of the Loan Amendment and

certainly satisfies whatever pleading burden Rank may have.[6]  Whatever Alcoa may later attempt

to argue about the facts, Rank's allegation, supported by the Final Notice, that the tax was

imposed because of Alcoa's 2008 Loan Transaction must be taken as true for purposes of this

motion.

**CONCLUSION**

For all the foregoing reasons, Plaintiff requests that the Court enter an order denying

Defendant's Motion to Dismiss in its entirety.[7]

Dated:     New York, New York
           July 30, 2012
                                  DEBEVOISE & PLIMPTON LLP

                                  By:    s/ Gary W. Kubek

                                     Gary W. Kubek (gwkubek@debevoise.com)
                                     Vanessa De Simone (vsdesimo@debevoise.com)
                                     Joshua Weigensberg (jweigens@debevoise.com)

                                  919 Third Avenue
                                  New York, New York 10022
                                  (212) 909-6000

                                  Attorneys for Plaintiff Rank Group Limited

---

[6]   Rank also alleges that the amendment was done in the ordinary course of business, Compl. ¶ 28, which takes it out of the exception in Section 13.01(a)(iv)(B).

[7]   In the event that the Court concludes that Rank has failed to satisfy its pleading burden, Rank respectfully requests leave to file an amended complaint remedying any deficiency.