UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RANK GROUP LIMITED,

                Plaintiff,

   - against -

ALCOA INC.,

                Defendant.
------------------------------------------------------------X

No. 12 cv 3769 (GBD) (MHD)

ECF Case

### DEFENDANT ALCOA INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant Alcoa Inc. ("Alcoa") respectfully submits this Reply Memorandum of Law in further support of its Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).[1]

    **1.**    <u>**Rank is not entitled to indemnification under Section 13.01(a)(i)**</u>

Alcoa's Opening Brief established that the plain language of Section 13.01(a)(i) limits Alcoa's potential indemnification obligation to "Pre-Closing Date Tax Periods" – *i.e.,* tax periods occurring prior to the February 2008 Closing date. As Rank's Opposition acknowledges, and as discussed in Alcoa's Opening Brief, Rank's Complaint seeks indemnification for taxes imposed for the 2009 Chilean tax year. Thus, the only "Tax Period" that could be at issue in Rank's Complaint is Chile's 2009 tax year. The term "Pre-Closing Date Tax Period" is not ambiguous, and it does not include the 2009 Chilean tax year. Accordingly, Section 13.01(a)(i), by its plain terms, precludes Rank's claim. *See* Alcoa's Opening Brief, pp. 12-16.

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in Alcoa's Memorandum of Law in Support of Its Motion to Dismiss Plaintiff's Complaint. Dkt. No. 17.

Because Rank cannot dispute Alcoa's position on the basis of anything the Agreement says, it labels Alcoa's straightforward and commonsense interpretation of the Agreement's plain terms "linguistic legerdemain" and a "baseless linguistic argument." *See* Opposition, pp. 2, 7. That Rank would take issue with a "linguistic" approach is strange, given that under New York law, "[t]he best evidence of what parties to a written agreement intend is what they say in their writing." *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002). In truth, Rank engages in rhetorical sleight-of-hand by ignoring the Agreement's plain terms, in favor of two flawed arguments that attempt to transform the 2009 Chilean tax year into a pre-2008 "Tax Period."

*First*, Rank claims that, because the 2009 Chilean tax year allegedly relates to commercial activities that took place in 2008, the 2009 Chilean tax year is transformed into a "Pre-Closing Date Tax Period" – even though the Closing occurred in February 2008. *See* Opposition, pp. 7-8. Thus, Rank is seeking to re-write the Acquisition Agreement in order to change the allocation of risk agreed to by the parties, two highly experienced and sophisticated corporate entities that were represented by equally sophisticated counsel. The plain language of the Acquisition Agreement does not support the *post hoc* position, conjured by Rank, that the timing of "commercial activities" has any bearing on what the term "Tax Period" means.[2]

---

[2] Events in one calendar year often have tax consequences in later tax years. According to Rank, the Loan Agreement is an example of this common occurrence; taxes were assessed in connection with the 2008 Loan not just for the 2009 tax year, but also for the 2010 tax year. Rank has not claimed that both the 2009 and 2010 Chilean tax years are "Pre-Closing Date Tax Periods" – such an argument would strain credulity. But, as a matter of logic, Rank's position implies that bizarre outcome. According to Rank, when events in the 2008 calendar year give rise to a 2009 tax year assessment, that 2009 tax year becomes a "Pre-Closing Date Tax Period." Thus, under Rank's position, even a 2010 (or later) tax year assessment would be indemnifiable, so long as it related back to 2008 events. And indeed, prior to this lawsuit, Rank did request indemnification from Alcoa for 2010 Chilean taxes, before ultimately backing off that position.

Indeed, the parties easily could have drafted the Acquisition Agreement to state that Alcoa would be obligated to indemnify Rank to the extent that "commercial activities" transpiring prior to the Closing date gave rise to a liability in a post-Closing date tax year. But as Rank implicitly acknowledges, the Agreement says no such thing. The flaw in Rank's position is further revealed by what Rank does not and cannot say – Rank has alleged no facts relating to the Agreement or its negotiation that contradict Alcoa's straightforward and commonsense interpretation of the contract language. Rank does not allege that the parties understood or agreed, prior to signing the Acquisition Agreement, that the 2009 Chilean tax year would constitute a "Pre-Closing Date Tax Period." Rank does not allege that the parties understood or agreed that, if a 2009 tax year liability "relate[d] to activities occurring during calendar year 2008" (Opposition, p. 7), then that post-Closing tax liability would be transformed into a "Pre-Closing Date Tax Period" liability. In short, Rank does not point to any language anywhere in the Acquisition Agreement – including in the definition of "Pre-Closing Date Tax Period" – that would enable this Court to conclude that the 2009 Chilean tax year is a pre-2008 "Tax Period." Under New York law, "[c]ourts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." *Dystal, Inc. v. Hub Props. Trust*, 92 A.D.3d 826, 827 (N.Y.A.D. 2012). Alcoa's Motion is grounded in the Agreement's plain and unambiguous terms, while Rank's Opposition attempts to transform those terms into an indemnification provision that does not exist in the contract.

***Second***, Rank claims that Section 13.01(a)(i) cannot mean what it says, because if it did, it would "lead to absurd and commercially unreasonable results," in that the indemnification obligation would be meaningless under Alcoa's interpretation. *See* Opposition, pp. 8-9. This

contention fails for two reasons. First and most importantly, it isn't true. Alcoa could have had tax indemnity obligations with respect to Chilean taxes under Section 13.01(a)(i)'s plain language: tax liabilities imposed with respect to Chile's **2008** tax year could have been subject to an indemnity claim for a "Straddle Tax Period," because the Closing occurred in February **2008**. (Presumably, no such liabilities were incurred, because Rank has never sought indemnity from Alcoa for 2008 Chilean taxes).[3] Alcoa's interpretation of the Agreement's plain terms does not render Section 13.01(a)(i) "meaningless" – Rank is simply unhappy that the 2009 Chilean Tax does not fall within the scope of the risk that Alcoa assumed under the Acquisition Agreement's indemnity provisions as they are written. That outcome is not "absurd," but rather is a function of the manner in which the parties agreed to allocate potential tax liabilities.

Indeed, the second reason Rank's "absurd results" argument fails is that it is entirely disconnected from the principles of contract interpretation that are dispositive in this case. New York law requires that contractual indemnity provisions, like those at issue here, be strictly construed to avoid reading into the contract a duty which the parties did not intend to be assumed. *See, e.g., Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 548 N.E.2d 903, 905 (N.Y. 1989). Rank seeks to flip this rule on its head by injecting an elasticity into the phrase "Pre-Closing Date Tax Period" that satisfies Rank's extra-contractual and self-serving view of what is "commercially reasonable."

---

[3] While Chilean taxes are now at issue, there are many other jurisdictions to which Section 13.01(a)(i) applies other than Chile, and a wide range of potential scenarios under which an indemnity obligation could have been triggered consistent with Alcoa's interpretation of the Agreement.

For that reason, Rank's appeal to "commercial reasonableness" is disconnected from what the contract actually says and rings hollow. This is particularly true because, as noted, Section 13.01(a)(i) is part of a detailed tax indemnity provision that two sophisticated business entities, each represented by counsel, negotiated and agreed would govern the allocation of tax liabilities with respect to a $2.7 billion transaction involving more than 25 subsidiaries. *See* Compl., ¶ 15. Rank's contention that the Court must somehow interpret the language of the Agreement to achieve what Rank believes is a "reasonable" outcome in regard to a $10 million Chilean Tax is not supported by law or logic. To the contrary, the only "reasonable" result is to enforce the risk allocation agreed to by the parties in their contract. And in that regard, the language of Section 13.01(a)(i) establishes a bright-line, black-and-white risk allocation with respect to potential tax liabilities: Alcoa is only liable for "Pre-Closing Date Tax Period" liabilities, and the 2009 Chilean Tax Year is not a "Pre-Closing Date Tax Period." Rank's subjective opinion (not pled in the Complaint) regarding what is "commercially reasonable" cannot amend the clear and unambiguous terms of the Acquisition Agreement. Therefore, Count I of the Complaint should be dismissed with prejudice.

### 2. Rank is not entitled to indemnification under Section 13.01(a)(iv)

Alcoa's Opening Brief demonstrated that Rank very carefully avoided directly addressing whether its amendment of the 2008 Loan triggered the Chilean Tax, in violation of the pleading requirements set forth in *Twombly*. *See* Alcoa's Opening Brief, pp. 16-19. Rank's Opposition has the virtue of being consistent – Rank continues to carefully avoid directly addressing whether its amendment of the 2008 Loan triggered the Chilean Tax. Instead, Rank argues that (i) it is not required to plead the non-applicability of Section 13.01(a)(iv)'s exceptions to satisfy its pleading

burden under *Twombly,* and (ii) even if it is, that Rank has "fulfilled, and indeed exceeded, its pleading burden." *See* Opposition, pp. 9-14. Neither argument has merit.

First, Rank was required to plead that, factually, its Loan Amendment did not trigger the Chilean Tax, and failed to do so. Contrary to Rank's hyperbole, Alcoa never claimed that Rank must plead the non-occurrence of every conceivable scenario under which Alcoa would have no Section 13.01(a)(iv) indemnification obligation. All Alcoa has said, consistent with *Twombly,* is that Rank must plead that its amendment of the 2008 Loan did not play a causal role in the imposition of the Chilean Tax, because that is a central factual issue posed under the terms of Section 13.01(a)(iv). In fact, Rank clearly recognizes this, having made a variety of circumspect allegations about the Loan Amendment in its Complaint. Having raised the issue, Rank cannot stop pleading in mid-stream so as to avoid what it evidently knows is a critical problem for Rank's indemnity claim under the terms of Section 13.01(a)(iv).

Indeed, Rank does not dispute its obligation, under *Twombly* and its progeny, to provide the "grounds of [its] entitlement to relief" under Section 13.01(a)(iv). *See* Opposition, pp. 9-10. Under this context-driven and claim-specific standard, "a complaint must do more than *allege* the plaintiff's entitlement to relief. A complaint has to *'show'* such an entitlement with its facts." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210-11 (3d Cir. 2009) (emphasis added); *see also Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 n.3 (2007) (Rule 8(a) "contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented" and does not authorize a pleader's "bare averment that he wants relief and is entitled to it") (citation omitted).

Moreover, a plaintiff may not omit facts from its complaint, of which it had notice and which, if included, would render its claims subject to dismissal under Rule 12(b)(6), simply to

stay in court, as Rank seems to have done here with its selective "half discussion" of the Loan Amendment. *Grosz v. Museum of Modern Art,* 772 F.Supp.2d 473, 497 (S.D.N.Y. 2010) (a plaintiff's "failure to include matters of which as pleaders they had notice and which were integral to their claim – and that they apparently most wanted to avoid – may not serve as a means of forestalling the district court's decision on [a] motion [to dismiss].") (citation omitted). "The federal pleading standards do not require unnecessary detail, but neither do they promote vagueness or reward deliberate obfuscation." *Royal Sleep Prods., Inc. v. Restonic Corp.,* No. 07 C 6588, 2010 WL 1172555, at *8 (N.D. Ill. Mar. 22, 2010) (citation omitted). "A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist." *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 437 (6th Cir. 1988).

These requirements apply squarely to Rank's claim for indemnification under Section 13.01(a)(iv). And as discussed below, Rank's Opposition continues the pattern of very carefully parsing words to avoid addressing the simple question: Did the Loan Amendment play a role in triggering the Chilean Tax?

In a weak effort to make it seem as if this question was answered in the Complaint, Rank asserts that it has "alleged additional facts which… establish that the exceptions… do not apply." *See* Opposition, p. 12. Specifically, Section 13.01(a)(iv)(B) carves out from Alcoa's potential indemnification responsibility under that provision any taxes for a "Post-Closing Date Tax Period that would not have arisen *but for any action taken by the Purchaser or any of its Affiliates*[.]" *See* Acquisition Agreement, § 13.01(a)(iv)(B) (emphasis added). Rank argues that the Complaint alleges – citing 17 individual paragraphs – that "the cause of the tax was the 2008

Loan Transaction undertaken as a Post-Signing Restructuring Action by Alcoa, not any action taken by Rank or any of its Affiliates." *See* Opposition, pp. 12-13. But significantly, none of the 17 paragraphs cited by Rank – or any other paragraph of its 57-paragraph Complaint – ever alleges that Rank's Loan Amendment did not play a causal role in triggering the imposition of the Chilean Tax.

In sum, Rank has not – and apparently cannot – plead facts that, if true, would establish its entitlement to relief under Section 13.01(a)(iv). As such, Count II of the Complaint should be dismissed with prejudice.

## CONCLUSION

For all of the foregoing reasons, and those set forth in Alcoa's Opening Brief, Alcoa respectfully requests that the Court enter an order (i) dismissing Plaintiff Rank Group Limited's Complaint in its entirety and with prejudice, and (ii) awarding Alcoa such other and further relief as the Court deems just and proper.

Dated: New York, New York
        August 13, 2012

s/ *Peter N. Flocos*
Peter N. Flocos
K&L GATES LLP
599 Lexington Avenue
New York, NY 10022-6030
(212) 536-3900
(212) 536-3901 (fax)
Email: peter.flocos@klgates.com
and
Thomas E. Birsic (admitted *pro hac vice*)
Andrew R. Stanton (admitted *pro hac vice*)
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15221
(412) 355-6500
(412) 355-6501 (fax)

*Attorneys for Defendant Alcoa Inc.*

## CERTIFICATE OF SERVICE

I, Peter N. Flocos, hereby certify that on August 13, 2012, I caused a true and correct copy of the foregoing Defendant Alcoa Inc.'s Reply Memorandum of Law in Further Support of its Motion to Dismiss Plaintiff's Complaint to be filed electronically and served via the Court's ECF system.

/s/ Peter N. Flocos
Peter N. Flocos