

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RANK GROUP LIMITED, : No. 12 cv 3769 (GBD)
:
Plaintiff, :
: ECF Case
- against - :
: [~~~~~~~~] **REQUEST FOR**
ALCOA INC., : **INTERNATIONAL JUDICIAL**
: **ASSISTANCE (LETTER**
Defendant. : **ROGATORY) TO TAKE EVIDENCE**
: **ABROAD OF SERVICIO DE**
: **IMPUESTOS INTERNOS**
:
------------------------------------------------------------X

The United States District Court for the Southern District of New York (the "Court") presents its compliments to the appropriate judicial authority of the country of Chile, and respectfully requests international judicial assistance to obtain evidence to be used in the above-captioned civil proceeding pending before this Court, which is necessary in the interests of justice.

Specifically, this Court requests that the appropriate judicial authority in Chile compel (i) the production of documents relating to an audit by Servicio de Impuestos Internos ("SII") of Alusud Embalajes Chile Ltda. ("Alusud Chile") for Chilean tax years 2009 and 2010, and the imposition of taxes, fines and interest for those years, and (ii) the taking of oral testimony under oath of a representative(s) of SII with knowledge of the audit and tax assessment. The Court requests that the documents produced by SII be returned to this Court under cover duly sealed and addressed to: Clerk of the District Court for the Southern District of New York (Attention: The Honorable George B. Daniels), United States of America, 500 Pearl Street, New York, New York 10007-1312, United States of America.

## I.   FACTUAL BACKGROUND

On or about May 11, 2012, Plaintiff Rank Group Limited ("Rank") filed a Complaint against Defendant Alcoa Inc. ("Alcoa"), seeking indemnification from Alcoa for taxes, fees and interest assessed against Rank's subsidiaries, Alusud Chile and CSI Latin American Holdings Corporation ("CSI LAHC"), by SII for the 2009 Chilean tax year. Rank acquired Alusud Chile, a company organized under the laws of the country of Chile, and CSI LAHC (f/k/a Alcoa Latin American Holdings Corporation, or "ALAHC"), Alusud Chile's parent company, among other subsidiaries of Alcoa that comprised its Packaging & Consumer business, in a transaction memorialized in an Acquisition Agreement dated as of December 21, 2007, and which closed on February 29, 2008 (the "Closing").

In pertinent part, the Acquisition Agreement authorized Alcoa to take certain "Post-Signing Restructuring Actions" prior to Closing. One of these Post-Signing Restructuring Actions was a pre-closing loan by Alusud Chile to its direct parent, CSI LAHC, in the amount of approximately US$34,000,000 (the "2008 Loan"). The 2008 Loan was memorialized in an agreement dated as of January 29, 2008 (the "2008 Loan Agreement"), which had a maturity date of January 28, 2009 and provided that the "agreement may not be renewed". Alusud Chile and CSI LAHC amended the 2008 Loan Agreement in an amendment dated as of January 28, 2009 (the "Loan Amendment"), which, among other things, amended the maturity date to January 28, 2012.

On September 27, 2010, SII notified Alusud Chile that it had begun an audit of Alusud Chile for the 2009 and 2010 Chilean tax years (the "Audit") (Audit Control Number 7803). Rank alleges that, at the conclusion of the Audit, SII imposed upon, and Alusud Chile and CSI

LAHC paid, a total of $10,139,882.24 in additional taxes, fines and interest for the 2009 Chilean tax year (collectively, the "Chilean Tax").

Facts related to the SII's Audit and the imposition of the Chilean Tax may be relevant to the resolution of this case, including the following: (i) whether the 2009 Loan Amendment was at issue in SII's Audit and/or its assessment of the Chilean Tax against Alusud Chile and CSI LAHC; (ii) whether SII would have audited Alusud Chile if the 2008 Loan had been repaid in January 2009; (iii) whether SII would have assessed the Chilean Tax against Alusud Chile and CSI LAHC if the 2008 Loan had been repaid in January 2009; and (iv) the date(s) on which the Chilean Tax was triggered and owed under Chilean tax law. Neither the parties nor this Court are challenging the Audit or the imposition of the Chilean Tax by SII.

## II.    ASSISTANCE REQUESTED

The Court requests that the appropriate judicial authority designated to execute this letter rogatory compel the production of documents from SII and the taking of oral testimony under oath of representatives of SII with knowledge of the Audit and the Chilean Tax, as set forth below, to the extent permitted by Chilean law.

### A.    Definitions

The following definitions shall apply to the requests for production of documents and oral testimony under oath.

1. "*Alcoa*" shall mean Alcoa Inc., and any of its agents, employees, directors, officers, representatives, attorneys or other persons acting on its behalf.

2. "*Alusud Chile*" shall mean Alusud Embalajes Chile Ltda., Chilean tax identification No. 78, 171, 060-1, and any of its agents, employees, directors, officers, representatives, attorneys or other persons acting on its behalf.

3. "*Audit*" shall mean the audit of Alusud Chile by Servicio de Impuestos Internos for Chilean tax years 2009 and 2010.

4. "*Chilean Tax*" shall mean the taxes, fines and interest assessed against Alusud Chile and CSI LAHC by SII as a result of the Audit.

5. "*CSI LAHC*" shall mean CSI Latin American Holdings Corporation, f/k/a Alcoa Latin American Holdings Corporation, the parent company of Alusud Chile, and any of its agents, employees, directors, officers, representatives, attorneys or other persons acting on its behalf.

6. "*Rank*" shall mean Rank Group Limited, and any of its agents, employees, directors, officers, representatives, attorneys or other persons acting on its behalf.

7. "*2008 Loan Agreement*" shall mean the Loan Agreement between Alusud Chile and Alcoa Latin American Holdings Corporation, dated as of January 29, 2008.

8. "*2008 Loan*" shall mean the loan memorialized in the 2008 Loan Agreement.

9. "*Loan Amendment*" shall mean the amendment to the 2008 Loan Agreement, between CSI LAHC and Alusud Chile, dated as of January 28, 2009.

**B.    Production of Documents**

Please produce copies of the following documents from SII to the Court:

1. SII's complete file(s) relating to the Audit and the Chilean Tax.

2. All communications between SII and Alusud Chile, CSI LAHC and/or Rank, including but not limited to audit and other letters, emails, and notices, referring or relating to the Audit or the Chilean Tax.

3. All internal SII communications referring or relating to the Audit, the Chilean Tax, the 2008 Loan Agreement or the Loan Amendment, including any internal SII memoranda or analyses referring or relating to the Audit, the Chilean Tax, the 2008 Loan Agreement or the Loan Amendment.

4. Any agreements, stipulations and/or waivers between SII and Rank, Alusud Chile and/or CSI LAHC relating to the Audit or the Chilean Tax.

5.  All documents relating to payment(s) made to SII by or on behalf of Rank, Alusud Chile and/or CSI LAHC for the Chilean Tax.

6.  All documents received by SII from Rank, Alusud Chile and/or CSI LAHC relating to the Audit or the Chilean Tax.

7.  All documents relating or referring to the 2008 Loan Agreement.

8.  All documents relating to referring to the Loan Amendment.

C.  **Oral Testimony Under Oath**

The Court requests the oral testimony under oath of the representative(s) of SII with knowledge of the Audit and assessment of the Chilean Tax. If local law does not permit the use of oath or affirmation, then the evidence should be taken in the normal manner permitted by law. It is requested that the examination be conducted in person and by stenographic means, and continue from day to day until completed. The questions to be asked are as follows:

1.  Please state your full name.

2.  Are you presently employed by SII?

3.  When did you first become employed by SII?

4.  What is your current job title at SII?

5.  For how long have you held that title?

6.  Please describe your duties and responsibilities at SII.

7.  What was your job title(s) at the time of the Audit?

8.  For how long did you hold that title?

9.  Describe your duties and responsibilities at the time of the Audit.

10. What were your responsibilities with respect to the Audit?

11. Did you play a decision-making role with respect to the taxes that were assessed against Alusud Chile and/or CSI LAHC as a result of the Audit?

12. Who else from SII played a role in the Audit, and what were their respective responsibilities?

13. Do you know why SII decided to undertake the Audit of Alusud Chile?

14. Describe in detail the reasons why SII decided to conduct the Audit.

15. Did the 2008 Loan Agreement play a role in SII's decision to conduct the Audit?

16. If the answer to question 15 is "yes," how did SII become aware of the 2008 Loan Agreement prior to the Audit?

17. If the answer to question 15 is "yes," explain in detail the role the 2008 Loan Agreement played in SII's decision to conduct the Audit.

18. If the answer to question 15 is "yes," please identify the date on which SII was given a copy of the 2008 Loan Agreement and the person(s) who provided the copy to SII.

19. When did SII first become aware of the Loan Amendment?

20. Was SII provided a copy of the Loan Amendment?

21. If the answer to question 20 is "yes," please identify the date on which SII was given a copy of the Loan Amendment and the person(s) who provided the copy to SII.

22. Would SII have conducted the Audit if the 2008 Loan had been repaid in full in January 2009, prior to the Audit?

23. If the answer to question 22 is "no," what is the basis for your answer?

24. Would SII have assessed the Chilean Tax if the 2008 Loan had been repaid in full in January 2009, prior to the Audit?

25. If the answer to question 24 is "yes," would the amount of the Chilean Tax have been reduced if the 2008 Loan had been repaid in full in January 2009, prior to the Audit?

26. If the answer to question 25 is "yes," please state the amount by which the Chilean Tax would have been reduced if the 2008 Loan had been repaid in full in January 2009, prior to the Audit.

27. If the answer to question 25 is "yes," please explain the basis for your response, including the provisions of Chilean tax law your response is based upon.

28. If the answer to question 24 is "no," please explain the basis for your response, including the provisions of Chilean tax law your response is based upon.

29. Was it relevant to SII's decision to impose the Chilean Tax whether or not CSI LAHC intended to repay the 2008 Loan at the time of the 2008 Loan Agreement?

30. Was it relevant to SII's decision to impose the Chilean Tax whether or not CSI LAHC had the capability to repay the 2008 Loan in January 2009?

31. Are there any circumstances under which the 2008 Loan would not have been subject to a withholding tax under Chilean tax law?

32. If the answer to question 31 is "yes," please identify the circumstances under which the 2008 Loan would not have been subjected to a withholding tax.

33. Had the 2008 Loan been repaid in full in January 2009, prior to the Audit, would the 2008 Loan have been characterized by SII as a profit distribution subject to dividend withholding tax?

34. If the answer to question 33 is "no," please explain the basis for your response, including the provisions of Chilean tax law your response is based upon.

35. Had the 2008 Loan been repaid in full in January 2009, prior to the Audit, would the 2008 Loan have been characterized as a loan for tax purposes by SII?

36. If the answer to question 35 is "yes," would the characterization of the 2008 Loan as a loan have changed the taxes owing as a result of the transaction?

37. During the Audit, did SII discuss the Loan Amendment with Alusud Chile, CSI LAHC, and/or Rank, or their lawyers or advisors?

38. If the answer to question 37 is "yes," for each such discussion please identify the persons involved in the discussion (including their title), and describe in detail the substance of the discussion.

39. Did SII prepare any internal memoranda or analyses referring or relating to the 2008 Loan Agreement, the 2008 Loan, and/or the Loan Amendment?

40. If the answer to question 39 is "yes," identify each such analysis or memorandum, including the date, author and recipients, and describe the substance of each such analysis.

41. Did SII ever discuss the potential that Alcoa would indemnify Rank for the Chilean Tax with Rank, CSI LAHC, and/or Alusud Chile, or any representatives, lawyers or advisors of those entities?

42. If the answer to question 41 is "yes," for each such discussion please identify the persons involved in the discussion (including their title), and describe in detail the substance of the discussion.

43. If the answer to question 41 is "yes," did the possibility that Alcoa would indemnify Rank for the Chilean tax affect the conduct or results of the Audit?

44. Did the payment or non-payment of dividends by Alusud Chile to its parent company prior to February 2008 play a role in SII's decision to conduct the Audit?

45. If the answer to question 44 is "yes," please explain what role it played.

46. Did the payment or non-payment of dividends by Alusud Chile to its parent company prior to February 2008 play a role in SII's decision to impose the Chilean Tax?

47. If the answer to question 46 is "yes," please explain what role it played.

48. Are there any drafts of the August 12, 2011 Notice Letter of Review Completion issued by SII to Alusud Chile?

49. Did SII show, or provide a copy to, Rank, CSI LAHC and/or Alusud Chile any draft(s) of the August 12, 2011 Notice Letter of Review Completion?

50. If the answer to question 49 is "yes," please identify the date(s) on which such draft(s) were shown and/or sent, and the individual(s) to whom the draft was shown and/or sent.

51. Did Rank, CSI LAHC and/or Alusud Chile provide any comments and/or suggested revisions to the August 12, 2011 Notice Letter of Review Completion before it was finalized?

52. If the answer to question 51 is "yes," please identify the individual(s) who provide comments and/or suggested revisions, and describe in detail the substance of the comments and/or suggested revisions.

53. Did SII receive a copy of the Acquisition Agreement?

54. If the answer to question 53 is "yes," please identify the date on which SII received a copy of the Acquisition Agreement, and the person(s) who provided a copy of the Acquisition Agreement to SII.

55. If the answer to question 53 is "yes," did the Acquisition Agreement affect the conduct or results of the Audit?

56. Identify the date(s) on which the Chilean Tax was triggered under Chilean tax law.

57. Identify the date(s) on which the Chilean Tax was considered due and payable under Chilean tax law and in what amount(s).

58. What period of commercial activity was covered by the Chilean "Tax Year 2009," as that term is used in the SII Notice of Review Completion sent to Alusud Chile on or around August 12, 2011?

59. Have you had any discussions with any representative of Alcoa or its subsidiaries regarding the Audit or this litigation? If yes, please describe them.

60. Do you know if anyone else at SII has had any discussions with any representative of Alcoa or its subsidiaries regarding the Audit or this litigation? If yes, please describe them.

Finally, it is requested that the following counsel of record for the parties be notified of the time and place for the examination(s) of witness(es) within a reasonable time prior to such examination(s):

| ***Counsel of Record for Plaintiff, Rank Group Ltd.:*** | ***Counsel of Record for Defendant, Alcoa Inc.:*** |
|---|---|
| Gary W. Kubek, Esq.<br>Vanessa Stich De Simone, Esq.<br>DEBEVOISE & PLIMPTON LLP<br>919 Third Avenue<br>New York, NY 10022 USA<br>+ 1 212 909 6000<br>+ 1 212 521 7067 (fax)<br>gwkubek@debevoise.com<br>vsdesimo@debevoise.com | Peter N. Flocos<br>K&L GATES LLP<br>599 Lexington Avenue<br>New York, NY 10022-6030 USA<br>+ 1 212 536 3900<br>+ 1 212 536 3901 (fax)<br>peter.flocos@klgates.com<br><br>and<br><br>Thomas E. Birsic<br>Andrew R. Stanton<br>K&L GATES LLP<br>K&L Gates Center<br>210 Sixth Avenue<br>Pittsburgh, PA 15222 USA<br>+ 1 412 355 6500<br>+ 1 412 355 6501 (fax) |

|   | thomas.birsic@klgates.com<br>andrew.stanton@klgates.com |
|---|---|

**D.    Certification**

With respect to documents and records of regularly conducted business activities, please order the custodian of the documents and/or records or another qualified person to certify in writing, subject to penalty of perjury under the laws of Chile, whether:

(A)    such document or record was made at or near the time of the occurrence of the matters set forth, by (or from information transmitted by) a person with knowledge of those matters;

(B)    such document or record was kept in the course of regularly conducted business activity;

(C)    the document or record was created and kept as a regular practice; and

(D)    if such document or record is not the original, such document is a duplicate of the original.

With respect to official records, please do the following:

(A)    secure certified copies of the official records; and

(B)    have the official providing the documents attach an attestation that the documents are official records provided in his or her official capacity, or, in the event that the official does not have a formal certificate, stamp or seal of attestation, have him or her complete an attestation of authenticity of official records.

**III.    RECIPROCITY AND COSTS**

The United States District Court for the Southern District of New York respectfully expresses its willingness to provide similar assistance to the judicial authorities of Chile. The

fees and costs incurred in executing this request that are reimbursable pursuant to applicable law will be borne by Alcoa.

Please accept the assurance of our highest esteem.

Date: New York, New York
October __, 2012

DEC 03 2012

_____
George B. Daniels, District Judge
United States District Court
Southern District of New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

I, _____, U.S. District Judge of the United States District Court in and for the Southern District of New York, do hereby certify that _____, whose signature is attached to the letter hereto annexed, was at the date thereof the Clerk of the United States District Court in and for the Southern District of New York; that the official acts and doings of said Clerk are entitled to full faith and credit; and that the attestation to said letter of request is in due form of law. I further certify that the seal attached to said letter of request is the seal of this Court.

WITNESS my hand and seal of said Court in the City of New York on this ____ day of _____, in the year of our Lord _____.

DEC 03 2012

_____
United States District Judge